IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOMMY SHARP,

    Plaintiff,

v.                                                                                                  No. 21-cv-0700 WJ-SMV

STATE OF NEW MEXICO,
ALL STATE ELECTED PERSONS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    This matter comes before the Court *sua sponte* in light of Plaintiff Donald "Tommy" Sharp's lengthy pattern of abusive filings. For the reasons below, the Court will direct Sharp to show cause why it should not impose filing restrictions.

## BACKGROUND

    Sharp is a federal pretrial detainee. He filed the first of many Civil Complaints pursuing a government corruption theory on October 21, 2019. *See* 19-cv-986 MV/LF. He alleged various government officials were involved in racketeering. The Court (Hon. Martha Vazquez) dismissed the Complaint with prejudice.

    Between July 27, 2021 and September 1, 2021, Sharp commenced at least 28 more civil actions. Many expand on his sovereign-citizen type theories about government corruption, but the recent cases are more varied. The complete list of Sharp's 29 filings, including this case, is as follows:

    1. *Sharp, et al., v. Lujan-Grisham, et al.,* 19-cv-986 MV/LF (racketeering allegations against state officials)

    2. *Sharp v. United States,* 21-cv-698 JB/GBW (alleging "Entire U.S. Government" is holding Sharp prisoner and committing racketeering, fraud, and treason, etc.)

3. *Sharp v. Core Civic,* 21-cv-699 KG/GJF (alleging Core Civic prison employees are guilty of racketeering, fraud, and medical indifference and that COVID-19 is a "scam")

4. *Sharp v. State of New Mexico*, 21-cv-700 WJ/SMV (alleging all elected New Mexico officials failed to perfect their oath of office/surety bond requirements and are involved in racketeering, treason, and fraud)

5. *Sharp v. Raysanek*, 21-cv-703 JB/JFR (alleging state judge failed to perfect their oath of office/surety bond requirements and is involved in racketeering and treason)

6. *Sharp v. Department of Justice*, 21-cv-704 MV/JFR (alleging U.S. Department of Justice department ignored fraud, racketeering, and treason as a result of the state surety bond issue)

7. *Sharp v. U.S. Supreme Court*, 21-cv-705 JCH/KBM (alleging U.S. Supreme Court Justices ignored "conclusive evidence" of treason and racketeering)

8. *Sharp v. New Mexico Board of Finance,* 21-cv-711 JB/GBW (alleging state agency failed to ensure state officials have the required surety bond and are guilty of racketeering, etc.)

9. *Sharp v. City of Edgewood Chief of Police,* 21-cv-712 JB/JHR (alleging local police failed to act on evidence that state officials did not perfect their oath of office/surety bond requirements, which constitutes racketeering)

10. *Sharp v. Mace*, *Cibola County Sheriff,* 21-cv-714 MV/SMV (Cibola sheriff failed to act on evidence of surety defects, which constitutes racketeering, etc.)

11. *Sharp v. Biden*, 21-cv-719 KWR/CG (alleging Biden is a "fake president" who committed fraud, treason, and racketeering)

12. *Sharp v. El*, 21-cv-720 KWR/GBW (alleging federal agents committed fraud, treason, racketeering, and wrongdoing in connection with Plaintiff's arrest)

13. *Sharp v. U.S. Marshals Service*, 21-cv-721 RB/GJF (alleging federal marshals conspired with the secret service to illegally detain Plaintiff)

14. *Sharp v. Gonzales,* 21-cv-769 MV/LF (alleging Bernalillo county sheriff did not comply with surety bond requirements, which constitutes racketeering, etc.)

15. *Sharp v. Federal Bureau of Investigation,* 21-cv-770 KWR/SCY (alleging FBI ignored surety bond defects and committed racketeering, etc.)

16. *Sharp v. U.S. House of Representatives,* 21-cv-771 MV/SCY (same, but naming the U.S. House Representatives)

17. *Sharp v. Lea County Sheriff,* 21-cv-772 MV/LF (alleging all state sheriffs failed to comply with surety bond requirements)

18. *Sharp v. U.S. Federal Public Defenders Office,* 21-cv-819 JB/CG (alleging public defender failed to adequately represent Plaintiff)

19. *Sharp, et al., v. Core Civic,* 21-cv-820 WJ/JFR (alleging Core Civil is interfering with the right to a fair trial by charging for copies)

20. *Sharp v. Zuckerberg,* 21-cv-825 JB/SMV (alleging Facebook illegally censors users and interferes with elections)

21. *Sharp v. National Aeronautical Space Administration,* 21-cv-826 MV/GJF (alleging NASA "fakes space to steal money from the public trust")

22. *Sharp v. Department of Homeland Security*, 21-cv-827 KWR/KRS (alleging U.S. Department of Homeland Security allowed an improper raid of Plaintiff's home and ignored surety bond violations)

23. *Sharp v. Center for Disease Control,* 21-cv-828 JB/SMV (alleging the CDC, Bill Gates, and President Obama "perpetrat[ed] a genocide" because "COVID-19 is a scam")

24. *Sharp v. General Services Department,* 21-cv-829 WJ/GBW (alleging state agency/employees failed to answer requests for public information regarding surety bonds, which constitutes fraud, etc.)

25. *Sharp v. Balderas,* 21-cv-830 JB/KRS (alleging state attorney general officials failed to address the surety bond issue, which constitutes racketeering, etc.)

26. *Sharp v. N.M. Secretary of State,* 21-cv-831 RB/KK (same, but naming the N.M. Secretary of State)

27. *Sharp v. Michelle Lujan Grisham,* 21-cv-839 KWR/SCY (same, but naming the N.M. Governor)

28. *Sharp v. American Bar Association*, 21-cv-840 KWR/KK (alleging all ABA lawyers are members of the British nobility and loyal to Britain).

29. *Sharp v. All 50 State Governors,* 21-cv-858 MV-GJF (alleging state governors failed to enforce surety bond requirements and committed racketeering, treason, etc.)

Each Complaint typically seeks between $5 Million to $10 Billion in damages, forfeiture

3

of all of Defendants' assets to Plaintiff, arrest/prosecution of the Defendants and, in many cases, imposition of the death penalty against Defendants.  Sharp has explicitly threatened to escalate this pattern of filings.  In Complaints "# 20-26," Sharp stated: "I plan to file many more so get ready.  I anticipate there could be hundreds."  *See* Doc. 1 at 4 in 21-cv-829 WJ/GBW.  He also admits he is "just getting warmed up.  Here comes the perfect storm for justice."  Doc. 1 at 4 in 21-cv-839 KWR/SCY, Doc. 1 at 4).

Sharp has not paid the filing fee for any of the civil actions he has commenced.  The Court entered cure orders in most cases and mailed him blank *in forma pauperis* applications.  He initially refused to comply.  In some cases, he responded to the cure orders by insisting that "the court is going to pay all my fees."  *See* Doc. 1 at 4 in 21-cv-829 WJ/GBW.  Elsewhere, he took the position that it is not his responsibility to comply with 28 U.S.C. § 1915 in each case.  He stated: "I have less than $1,000.  I have a public defender and an EBT card.  I should not have to prove this every single time I file a claim.   IT IS STUPID!"  *See* Doc. 1 at 5 in 21-cv-0826 MV-GJF.  More recently, Sharp filed applications to proceed *in forma pauperis* in few of the cases, but he did not attach an inmate account statement as directed in the cure orders.  *See, e.g.,* Doc. 5 in 21-cv-700 WJ-SMV.  Sharp also takes the position that the Court should conduct its own research regarding his various cases.  In the section of a Civil Rights Form requesting information about prior federal cases, he state: "Too many to list – look them up."  *See* Doc. 4 at 4, 21-cv-769 MV-LF.

In addition to the 28 cases Sharp filed in the past month or so, it appears he also drafted at least 26 civil complaints on behalf of other inmates at the Cibola County Correctional Institute (CCCI).  *See* 21-cv-753; 21-cv-762; 21-cv-763; 21-cv-776; 21-cv-778; 21-cv-779; 21-cv-780; 21-

cv-781; 21-cv-785; 21-cv-786; 21-cv-787; 21-cv-788; 21-cv-789; 21-cv-790; 21-cv-792; 21-cv-800; 21-cv-803; 21-cv-804; 21-cv-805; 21-cv-816; 21-cv-817; 21-cv-818; 21-cv-835; 21-cv-836; 21-cv-837; and 21-cv-838.  Those complaints feature the same handwriting, form, and sovereign citizen type allegations as Sharp's complaint.  Some reference Sharp, but they name different plaintiffs and are signed (or purportedly signed) at the bottom by other CCCI inmates.

## DISCUSSION

Federal courts may "regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances."  *Landrith v. Schmidt*, 732 F.3d 1171, 1174 (10th Cir. 2013) (internal quotation marks omitted).  Filing restrictions "are appropriate where [1] the litigant's lengthy and abusive history is set forth; [2] the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and [3] the litigant receives notice and an opportunity to oppose the court's order before it is implemented." *Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007).   The first element is clearly met in this case, as Sharp has filed at least 28 cases in the past month.  Although "[l]itigiousness alone will not support an injunction restricting filing activities," *see Jones v. Jones*, 820 Fed. App'x 659, 669 (10th Cir. 2020), the Court has rejected as frivolous Sharp's primarily theory (*i.e.,* that the absence of an oath/surety bond constitutes a crime against the U.S.).  *See* Doc. 7 in 21-cv-700 WJ-SMV.  Sharp's abusive tactics are also evidenced by his threat to file hundreds more lawsuits.

When crafting an appropriate restriction, the Tenth Circuit distinguishes between "indiscriminate filers and those who have limited their repetitive filings to a particular subject" or defendant.  *Ford v. Pryor*, 552 F.3d 1174, 1181 (10th Cir. 2008).  Courts are discouraged from imposing blanket restrictions, at least a first measure, to "include any subject matter and any party."

*Sieverding v. Colorado Bar Ass'n*, 469 F.3d 1340, 1345 (10th Cir. 2006).  Most courts start by imposing restrictions on "future matters related to the subject matter of [the litigant's prior] federal lawsuits."  *Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007)

From a practical standpoint, subject matter restrictions are likely ineffective as to Sharp.  Although his main focus is the surety bond issue/racketeering, his complaints touch on a myriad of other topics such as outer space, COVID-19, election fraud, censorship, Fourth Amendment violations, conditions of confinement, and copy charges.  The complaints also name separate defendants.  Limiting Sharp as to subject matter would just mean that instead of screening hundreds of complaints on the record under 28 U.S.C. § 1915(e), the process would move off the record to screen claims against the restrictions.[1]  And, since most of Sharp's filings are mixed pleadings - referencing surety bond/racketeering along with other, novel issues - he would generally remain free to keep filing cases unhampered by the subject matter restrictions.  At the same time, the Tenth Circuit regularly rejects blanket restrictions imposed as a first line of defense against abusive filers.  *See, e.g., Kraft v. Hatch*, 853 Fed. App'x 261, 267 (10th Cir. 2021).

In light of these considerations and the unusual nature of this matter, the Court will restrict Sharp to filing one *pro se* civil case or *pro se* habeas petition per month.  The Tenth Circuit has approved this arrangement in at least one other case where the petitioner filed over 40 cases; raised

---

[1] This assumes the process would even happen off the record, which is uncommon.  Most recent Tenth Circuit cases reflect that the Circuit Clerk opens a new civil case submitted by a restricted filer and then dismisses the matter if it violates restrictions.  *See, e.g., United States v. Twitty,* 839 Fed. App'x 255, 257 (10th Cir. 2020); *Lipin v. Wisehart Springs Inn, Inc.*, 843 Fed. App'x 103, 110–11 (10th Cir. 2021); *Nelson v. Gallagher*, 2021 WL 2179323, at *2–3 (10th Cir. 2021).

This process, while appropriate in most cases, provides further evidence that a subject matter restriction would not work in this instance.  The Court would continue to be overwhelmed with the sheer volume of Sharp's abusive complaints, regardless of whether certain filings were ultimately dismissed as restricted.

non meritorious claims; and regularly failed to prosecute the matters after filing. *See Pinson v. Berkebile,* 601 Fed. App'x 611, 616 (10th Cir. 2015). This arrangement is also appropriate because Sharp is a pretrial detainee with appointed counsel; if he is subject to imminent danger, counsel can promptly address it by filing a motion in the pending criminal matter or by filing a civil case. The restrictions do not apply to filings signed by a licensed attorney who is admitted to practice before this Court. They are also limited to filings in this Court and will not apply to pleadings submitted before a final order is entered on restrictions.

If imposed, the restrictions will take effect October 1, 2021. The Clerk will accept and file the first *pro se* civil complaint or *pro se* habeas petition that the Clerk receives from Sharp starting on October 1, 2021 and each month thereafter. Sharp's monthly *pro se* civil complaint or habeas petition will be limited to 25 pages, handwritten or in 12-point font, with one-inch margins. Any *pro se* complaints or petitions filed by Sharp after he files his single civil complaint/petition for a given month will be returned to Sharp unfiled. The Clerk will not "bank" cases for Sharp until the next month. The process will start over on the first day of each month, so to ensure acceptance of the desired complaint, Sharp should mail one single *pro se* civil complaint or habeas petition in the first few days of each month and decline from submitting other filings until he receives a file-stamped copy of his one *pro se* filing. Sharp is warned that his monthly civil complaint will still be subject to 28 U.S.C. § 1915. That means Sharp must address the filing fee in each case, and if the Court dismisses three or more complaints as frivolous or for failure to state a claim, Sharp cannot proceed *in forma pauperis* unless he is in imminent danger. *See* 28 U.S.C. § 1915(g) (setting forth the three-strike rule).

Sharp is finally warned that as a *pro se* party, he is not permitted to represent other detainees

in their suits against the Court.  As the Tenth Circuit explained, "the competence of a layman is clearly too limited to allow him to risk the rights of others." *Fymbo v. State Farm Fire and Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (quotations omitted).  Sharp must stop filing complaints on behalf of other inmates.  Sharp is finally notified that if he continues to file frivolous complaints on behalf of himself or others, the Court may modify the above restrictions in the coming months to impose a blanket ban on his *pro se* filings.  The Court will issue separate notice with respect to any heightened restrictions, but such warning is included in this ruling to indicate where Sharp is headed, if he continues his abusive tactics.

Accordingly, **IT IS ORDERED** that by September 27, 2021, Sharp may file written objections, limited to fifteen pages, to the proposed restrictions limiting him to one *pro se* civil complaint or *pro se* habeas petition per month, as set forth above.  Any objections <u>must</u> be submitted in this case, labelled with this case number (21-cv-700 WJ-SMV).  The Court will not search through each of Sharp's other dockets for a misdirected response.  Nothing in this Order excuses Sharp from complying with directives in other cases.

**SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE