**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

———————————

TOMMY SHARP,

    Plaintiff,

v.                                           No. 21-cv-0700 WJ-SMV

STATE OF NEW MEXICO,
ALL STATE ELECTED PERSONS,

    Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court *sua sponte* in light of Plaintiff Donald "Tommy" Sharp's lengthy pattern of abusive filings. The Court previously gave Sharp an opportunity to show cause why he should not be limited to one new action per month. Having considered his response and the applicable law, the Court will impose that restriction as a starting measure. If Sharp continues his abusive tactics, he will face a total ban on *pro se* filings.

**BACKGROUND**

Sharp is a federal pretrial detainee. He filed the first of many Civil Complaints pursuing a government corruption theory on October 21, 2019. *See* 19-cv-986 MV/LF. He alleged various government officials were involved in racketeering. The Court (Hon. Martha Vazquez) dismissed the Complaint with prejudice.

Sharp filed 28 civil complaints between July 27, 2021 and September 1, 2021. After the Court prepared its Memorandum Opinion and Order on filing restrictions, he filed at least 12 more civil complaints, bringing the total to 41 in about two and a half months. Many complaints expand on his sovereign-citizen theories about government corruption, but the recent cases are more varied. The complete list of Sharp's 41 civil complaints, including this case, is as follows:

1. *Sharp, et al., v. Lujan-Grisham, et al,* 19-cv-986 MV/LF (racketeering allegations against state officials)

2. *Sharp v. United States,* 21-cv-698 JB/GBW (alleging "Entire U.S. Government" is holding Sharp prisoner and committing racketeering, fraud, and treason, etc.)

3. *Sharp v. Core Civic,* 21-cv-699 KG/GJF (alleging COVID-19 is a "scam" and prison employees are guilty of racketeering, fraud, and medical indifference)

4. *Sharp v. State of New Mexico,* 21-cv-700 WJ/SMV (alleging all elected New Mexico officials failed to perfect their oath of office/surety bond requirements and are involved in racketeering, treason, and fraud)

5. *Sharp v. Raysanek*, 21-cv-703 JB/JFR (alleging state judge failed to perfect his oath of office/surety bond requirements and is involved in racketeering and treason)

6. *Sharp v. Department of Justice*, 21-cv-704 MV/JFR (alleging U.S. Department of Justice department ignored fraud, racketeering, and treason as a result of the state surety bond issue)

7. *Sharp v. U.S. Supreme Court*, 21-cv-705 JCH/KBM (alleging U.S. Supreme Court Justices ignored "conclusive evidence" of treason and racketeering)

8. *Sharp v. New Mexico Board of Finance,* 21-cv-711 JB/GBW (alleging state agency failed to ensure state officials have the required surety bond and are guilty of racketeering, etc.)

9. *Sharp v. City of Edgewood Chief of Police,* 21-cv-712 JB/JHR (alleging local police failed to act on evidence that state officials did not perfect their oath of office/surety bond requirements, which constitutes racketeering)

10. *Sharp v. Mace*, *Cibola County Sheriff,* 21-cv-714 MV/SMV (Cibola sheriff allegedly failed to act on evidence of surety defects, which constitutes racketeering, etc.)

11. *Sharp v. Biden*, 21-cv-719 KWR/CG (alleging Biden is a "fake president" who committed fraud, treason, and racketeering)

12. *Sharp v. El*, 21-cv-720 KWR/GBW (alleging federal agents committed fraud, treason, racketeering, and wrongdoing in connection with Plaintiff's arrest)

13. *Sharp v. U.S. Marshals Service*, 21-cv-721 RB/GJF (alleging federal marshals conspired with the secret service to illegally detain Plaintiff)

14. *Sharp v. Gonzales,* 21-cv-769 MV/LF (alleging Bernalillo county sheriff did not comply with surety bond requirements, which constitutes racketeering, etc.)

15. *Sharp v. Federal Bureau of Investigation,* 21-cv-770 KWR/SCY (alleging FBI ignored surety bond defects and committed racketeering, etc.)

16. *Sharp v. U.S. House of Representatives,* 21-cv-771 MV/SCY (same, but naming the U.S. House Representatives)

17. *Sharp v. Lea County Sheriff,* 21-cv-772 MV/LF (alleging all state sheriffs failed to comply with surety bond requirements)

18. *Sharp v. U.S. Federal Public Defenders Office,* 21-cv-819 JB/CG (alleging public defender failed to adequately represent Plaintiff)

19. *Sharp, et al., v. Core Civic,* 21-cv-820 WJ/JFR (alleging Core Civil is interfering with the right to a fair trial by charging for copies)

20. *Sharp v. Zuckerberg,* 21-cv-825 JB/SMV (alleging Facebook illegally censors users and interferes with elections)

21. *Sharp v. National Aeronautical Space Administration,* 21-cv-826 MV/GJF (alleging NASA "fakes space to steal money from the public trust")

22. *Sharp v. Department of Homeland Security*, 21-cv-827 KWR/KRS (alleging U.S. Department of Homeland Security allowed an improper raid of Plaintiff's home and ignored surety bond violations)

23. *Sharp v. Center for Disease Control,* 21-cv-828 JB/SMV (alleging the CDC, Bill Gates, and President Obama "perpetrat[ed] a genocide" because "COVID-19 is a scam")

24. *Sharp v. General Services Department,* 21-cv-829 WJ/GBW (alleging state agency/employees failed to answer requests for public information regarding surety bonds, which constitutes fraud, etc.)

25. *Sharp v. Balderas,* 21-cv-830 JB/KRS (alleging state attorney general officials failed to address the surety bond issue, which constitutes racketeering, etc.)

26. *Sharp v. N.M. Secretary of State,* 21-cv-831 RB/KK (same, but naming the N.M. Secretary of State)

27. *Sharp v. Michelle Lujan Grisham,* 21-cv-839 KWR/SCY (same, but naming the N.M. Governor)

28. *Sharp v. American Bar Association*, 21-cv-840 KWR/KK (alleging all ABA lawyers are members of the British nobility and loyal to Britain).

29. *Sharp v. All 50 State Governors,* 21-cv-858 MV/GJF (alleging state governors failed to enforce surety bond requirements and committed racketeering, treason, etc.).

30. *Sharp v. State of New Mexico, et al,* 21-cv-864 WJ/KRS (alleging COVID-19 does not exist and mask mandates are fraudulent).

31. *Sharp v. Judge Garza, et al,* 21-cv-879 JB/KRS (alleging various federal judges are involved in a racketeering operation).

32. *Sharp v. Albuquerque Journal,* 21-cv-896 RB/CG (alleging local newspaper covered up fraud and government corruption by refusing to print Sharp's story).

33. *Sharp v. George Bush, et al,* 21-mc-028 (Doc. 6) (alleging President Bush and his administration planned the September 11, 2001 attack).[1]

34. *Sharp v. Judge Khalsa, et al,* 21-mc-028 (Doc. 7) (alleging federal judge, U.S. Attorney, and Federal Public Defender conspired to violate Sharp's rights).

35. *Sharp v. Judge Garza, et al,* 21-mc-028 (Doc. 9) (alleging various federal judges are involved in a racketeering operation).

36. *Sharp v. SW Forensic, et al,* 21-mc-028 (Doc. 11) (alleging the clinical psychologist involved in Sharp's federal criminal case is taking bribes).

37. *Sharp v. Cibola County Correction Center, et al,* 21-mc-028 (Doc. 14) (alleging jail officials do not have surety bonds, which constitutes racketeering, etc).

38. *Sharp, et al, v. United States, et al,* 21-mc-028 (Doc. 18) (alleging federal attorneys are members of the British nobility and loyal to Britain).

39. *Sharp v. State of New Mexico,* 21-mc-028 (Doc. 23) (same, again raising the British nobility theory).

40. *Sharp v. Jaramillo, et al,* 21-mc-028 (Doc. 24) (alleging prison officials are tampering with mail).

---

[1] On September 14, 2021, the Court opened a miscellaneous docket for Sharp's filings while researching the best way to efficiently process his new civil complaints in CM/ECF.   For example, the Clerk's Office can enable certain features in CM/ECF that make it possible to enter an omnibus order to cure in tens of cases directing Sharp to address the filing fee.   This filing measure has no impact on Sharp's substantive rights with respect to the complaints filed between September 14, 2021 and October 15, 2021.   The Court is still docketing each complaint as of the date it is received, reviewing it, and determining what procedural steps Sharp must take (*i.e.,* the filing fee requirements) to obtain a merits review of each pleading.   Said differently, and as discussed in more detail below, any civil complaint filed before entry of this decision will be reviewed in the ordinary course and is not subject to filing restrictions.

41. *Sharp v. United States,* 21-mc-028 (Doc. 31) (alleging the U.S. bribed a doctor to say Sharp is delusional).

Each Complaint typically seeks between $5 Million to $100 Billion in damages, forfeiture of all of Defendants' assets to Plaintiff, arrest/prosecution of the Defendants and, in many cases, imposition of the death penalty against Defendants.   Sharp has explicitly threatened to escalate this pattern of filings.   In Complaints "# 20-26," Sharp stated: "I plan to file many more so get ready.   I anticipate there could be hundreds."   *See* Doc. 1 at 4 in 21-cv-829 WJ/GBW.   He also admits he is "just getting warmed up.   Here comes the perfect storm for justice."   Doc. 1 at 4 in 21-cv-839 KWR/SCY.

Sharp has not paid a partial filing fee for any of the civil actions he has commenced.   The Court entered cure orders in most cases and mailed him blank *in forma pauperis* applications.   He initially refused to comply.   In some cases, he responded to the cure orders by insisting that "the court is going to pay all my fees."   Doc. 1 at 4 in 21-cv-829 WJ/GBW.   Elsewhere, he took the position that it is not his responsibility to comply with 28 U.S.C. § 1915 in each case.   He stated: "I have less than $1,000.   I have a public defender and an EBT card.   I should not have to prove this every single time I file a claim.   IT IS STUPID!"   Doc. 1 at 5 in 21-cv-0826 MV-GJF.   The few applications to proceed *in forma pauperis* Sharp did file were not accompanied by an inmate account statement as directed.   *See, e.g.,* Doc. 5 in 21-cv-700 WJ-SMV.   More recently, Sharp filed Motions to Discharge All Fees and Costs in each case, in which he essentially refuses to pay and states he "does not require *in forma pauperis* forms."   Doc. 8 in 21-cv-714 MV-SMV.

In addition to the 41 cases Sharp filed in the past month or so, it appears he also drafted at least 30 civil complaints on behalf of other inmates at the Cibola County Correctional Institute

(CCCI).   *See* 21-cv-753; 21-cv-762; 21-cv-763; 21-cv-776; 21-cv-778; 21-cv-779; 21-cv-780; 21-cv-781; 21-cv-785; 21-cv-786; 21-cv-787; 21-cv-788; 21-cv-789; 21-cv-790; 21-cv-792; 21-cv-800; 21-cv-803; 21-cv-804; 21-cv-805; 21-cv-816; 21-cv-817; 21-cv-818; 21-cv-835; 21-cv-836; 21-cv-837; 21-cv-838, 21-cv-878; 21-cv-895; 21-cv-903; and 21-cv-904.   Those complaints feature the same handwriting, form, and sovereign citizen allegations as Sharp's complaint.   Some reference Sharp, but they name different plaintiffs and are signed (or purportedly signed) at the bottom by other CCCI inmates.   In some instances, the actual Plaintiff quickly moved to withdraw their case; it appears they either did not understand the pleading's import or did not intend to file at all.   *See, e.g.,* 21-cv-860 KWR-SCY.

On September 13, 2021, the Court directed Sharp to show cause why it should not impose filing restrictions starting October 1, 2021.   The ruling was initially returned as undeliverable.   To ensure proper notice, the Court re-mailed the ruling and extended the show-cause deadline to October 12, 2021.   The proposed effective date for the restrictions was also extended to October 15, 2021.   Sharp received the second mailing and filed objections (Docs. 21, 26-28).   The Court will address restrictions and clarify the requirements for Sharp's existing cases, which are still subject to the Federal Civil Rules of Procedure.

## DISCUSSION

### A.   The Court Will Impose Filing Restrictions as of October 15, 2021

Federal courts may "regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances."   *Landrith v. Schmidt*, 732 F.3d 1171, 1174 (10th Cir. 2013) (internal quotation marks omitted).   Filing restrictions "are appropriate where [1] the litigant's lengthy and abusive history is set forth; [2] the court provides guidelines as

to what the litigant may do to obtain its permission to file an action; and [3] the litigant receives notice and an opportunity to oppose the court's order before it is implemented." *Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007).   Courts are strongly discouraged from imposing blanket restrictions, at least a first measure, to "include any subject matter and any party."   *Sieverding v. Colorado Bar Ass'n*, 469 F.3d 1340, 1345 (10th Cir. 2006).   Most courts impose restrictions on "future matters related to the subject matter of [the litigant's prior] federal lawsuits."   *Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007).

From a practical standpoint, subject matter restrictions are ineffective as to Sharp.   His main focus is the surety bond issue/racketeering, but his complaints touch on a myriad of other topics such as outer space, COVID-19, election fraud, censorship, Fourth Amendment violations, conditions of confinement, and copy charges.   The complaints also name separate defendants. Limiting Sharp as to subject matter would just mean that instead of screening hundreds of complaints on the record under 28 U.S.C. § 1915(e), the process would move off the record to screen claims against the restrictions.[2]   And, since most of Sharp's filings are mixed pleadings - referencing surety bond/racketeering along with other, novel issues - he would generally remain free to keep filing cases unhampered by the subject matter restrictions.   At the same time, the Tenth Circuit frequently rejects blanket restrictions imposed as a first line of defense against

---

[2] This assumes the process would even happen off the record, which is uncommon.   Most recent Tenth Circuit cases reflect that the Circuit Clerk opens a new civil case submitted by a restricted filer and then dismisses the matter if it violates restrictions.   *See, e.g., United States v. Twitty,* 839 Fed. App'x 255, 257 (10th Cir. 2020); *Lipin v. Wisehart Springs Inn, Inc.*, 843 Fed. App'x 103, 110–11 (10th Cir. 2021); *Nelson v. Gallagher*, 2021 WL 2179323, at *2–3 (10th Cir. 2021).

Such process, while appropriate in most cases, provides further evidence that a subject matter restriction would not work in this instance.   The Court would continue to be overwhelmed with the sheer volume of Sharp's abusive complaints, regardless of whether certain filings were ultimately dismissed as restricted.

abusive filers.  *See, e.g., Kraft v. Hatch*, 853 Fed. App'x 261, 267 (10th Cir. 2021) (reversing a blanket restriction on a prolific filer).

In light of these considerations, the Court proposed restricting Sharp to one *pro se* civil case or *pro se* habeas petition in the District of New Mexico per month.  *See* Doc. 11 in 21-cv-700 WJ-SMV.  The Tenth Circuit has approved this arrangement in at least one other case where the petitioner filed over 40 cases and raised non meritorious claims.  *See Pinson v. Berkebile,* 601 Fed. App'x 611, 616 (10th Cir. 2015).  This arrangement is also appropriate because Sharp is a pretrial detainee with appointed counsel; if he is subject to imminent danger, counsel can promptly address it.  The restrictions do not apply to filings signed by a licensed attorney who is admitted to practice before this Court.

The prior ruling set out the guidelines for filing, and those details are reiterated below. Sharp filed various objections to proposed restrictions.  *See* Docs. 21, 26-28 in 21-cv-700 WJ-SMV.  He alleges:

(a)  Filing restrictions are an obstruction of justice and a constitutional violation;

(b)  The Court lacks standing, jurisdiction, and authority to impose restrictions;

(c)  Restrictions are inappropriate for all of the reasons set out in Sharp's 41 civil complaints, including theories about British nobility, etc.

Sharp's primary theory - that the Court and its lawyers are loyal to Britain - is a known tactic used by sovereign citizens, and his remaining arguments are without merit.  *See, e.g., Westfall v. Davis,* 2018 WL 2422058, at *3 (N.D. Tex. May 4, 2018) (dismissing complaint where plaintiff, a sovereign citizen, claimed "all lawyers and judges are British nobility").

The Court will impose the following restrictions on Sharp's filings, which take effect October 15, 2021.  The Clerk will accept and file the first *pro se* civil complaint or *pro se* habeas

petition that the Clerk receives from Sharp starting on October 15, 2021 and on the first day of each month thereafter (*i.e.,* the first case received starting on November 1, December 1, etc).   Sharp's monthly *pro se* civil complaint or habeas petition will be limited to 25 pages, handwritten or in 12-point font, with one-inch margins.   Any *pro se* complaints or petitions (as distinguished from motions in an existing case) filed by Sharp after he files his single civil complaint/petition for a given month will not be filed and will not be returned to Sharp.[3]   In addition, the Clerk will not "bank" cases for Sharp until the next month.   The process will start over on the first day of each month, so to ensure acceptance of the desired complaint, Sharp should mail one single *pro se* civil complaint or habeas petition in the first few days of each month.

If Sharp continues to submit more than one complaint per month and/or raise frivolous theories, the Court will impose a blanket ban on his ability to file *pro se* actions in the District of New Mexico.   Sharp will then only be permitted to file civil complaints or habeas petitions through a licensed attorney.   Sharp has also been warned that he cannot represent other detainees.   If he continues to draft complaints on behalf of other parties and/or violate this Order, the Court may assess a fine for each violation and coordinate with the United States Marshall to collect that fine from his inmate account.   *See United States v. Akers,* 740 Fed. App'x 633, 635 (10th Cir. 2018) (affirming $500 fine for each frivolous filing).

**B.   Sharp's Existing Cases**

In his show-cause response, Sharp also expresses confusion and concern regarding the status of existing cases filed through October 14, 2021.   Sharp filed or drafted at least 71 civil

---

[3] Returning the unfiled complaints would impose a significant burden on staff because, based on Sharp's use of several different aliases, mail often travels back and forth between the jail and the Court many times over.

complaints within the last ten weeks, along with numerous motions, and it appears he cannot keep those filings straight. To clarify, any pleading Sharp filed before October 15, 2021 is not subject to these filing restrictions. The Court is also not "concealing" or cherry-picking which civil complaints to file, as Sharp alleges. All complaints filed before September 14, 2021 were opened in the ordinary course, randomly assigned, and handled on different tracks. When it became clear that Sharp would continue his daily barrage of filings, the Court opened omnibus case no. 21-mc-028 WJ to ensure public docketing of each case while it researched how to process Sharp's cases more efficiently in CM/ECF. The Court has accepted each complaint as of the day it was received, and any ministerial case processing decisions (*e.g.,* processing new cases using the original filing date, but with the benefit of previously unexplored omnibus functions in CM/ECF) will not impact Sharp's substantive rights.

Regarding Sharp's existing complaints, there is one final detail to address. He recently started filing motions with 20 or more case numbers at the top of the page. *See, e.g.,* Doc. 16 in 21-cv-700 WJ-SMV. The filings are often only relevant to one discrete matter, and in some instances, Sharp lists case numbers associated with unrelated plaintiffs. *See, e.g.,* Doc. 8 in 21-cv-776. Having submitted an abusive volume of complaints, and unable to track them separately, Sharp now expects Court staff to cross-docket all of his motions in all of his cases. *See, e.g.,* Doc. 16 in 21-cv-700 WJ-SMV; *see also* Doc. 4 at 4, 21-cv-769 MV-LF (referring to his prior cases and stating: "Too many to list – look them up"). There is no authority allowing this docketing practice in cases that have not been consolidated under Fed. R. Civ. P. 42. Sharp must bear the burden of tracking and prosecuting his own vexatious litigation by filing a separate motion in each case that bears a separate case number (*i.e.,* cases 1-32 listed above) or the number of the omnibus

miscellaneous case (21-mc-28), if the motion pertains to a complaint filed after September 14, 2021.   If Sharp submits another motion listing various case numbers, the Clerk's Office will <u>only</u> file that motion in the first case listed at the top of the motion, reading left to right.   For example, if the motion cites 25 case numbers starting with 21-cv-700, the Clerk's Office will only docket that motion in 21-cv-700 and disregard the rest.

**IT IS THEREFORE ORDERED** that the Court imposes filing restrictions on Plaintiff Donald "Tommy" Sharp, as set forth above.   The Clerk will only accept and file Sharp's first *pro se* civil complaint or *pro se* habeas petition that the Clerk receives starting on October 15, 2021 and on the first day of each month thereafter (*i.e.,* the first civil complaint or habeas petition received for the month starting on November 1, December 1, etc).   All other civil complaints or habeas petitions will not be filed and will not be returned.

**IT IS FURTHER ORDERED** that Sharp must file a separate motion, bearing only one case number, in each matter where he seeks relief.   If Sharp submits a motion, letter, or other filing listing various case numbers, the Clerk's Office shall only file such document in the first case listed at the top of the first page, reading left to right.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE